[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this limited contested dissolution action seeks a dissolution of marriage, custody, support, alimony and other ancillary awards. Both parties were represented by counsel at the trial of this case. The Court is cognizant of the provisions of General Statutes 46b-40 et seq., and the following findings and orders are made in accordance with the provisions contained therein.
The parties intermarried on May 24, 1986 in Newark, Delaware. The plaintiff has been a resident of the State of Connecticut for longer than twelve months next preceding the filing of the complaint. One minor child was born issue of the marriage, namely: Maria Elena Schulthess, born May 10, 1989.
The marriage between the parties, who have been living separately and apart since August 1992, has broken down irretrievably. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
Both parties have submitted proposed orders for the Court's consideration and in several areas there is little or no disagreement between them. The Court has considered the requests of both sides in its determination and orders.
Factual Findings
The parties met in 1982 and began living together in 1983. At that time the wife had a B.A. in art education and the husband was a doctoral candidate at the University of Delaware in the field of soil chemistry. Before they married, they discussed their future plans which, in general, contemplated that the husband would CT Page 4072 continue in the PHD program, that the wife would work to help him achieve his doctorate, that thereafter if they had children, the wife would stay at home raising the children, at least until they became of school age and any plans she had for furthering her own education would be put on hold at least until the husband obtained his PHD and settled into a permanent position.
At the time of marriage, the wife had savings and she paid for the wedding and honeymoon (approximately $6500). She had several thousands of dollars in addition which ultimately went to living expenses. The husband was getting a stipend of approximately $9000 annually from the U. of Delaware as part of his PHD program.
In 1985, the wife earned approximately $13,000. In 1986 she earned approximately $14,000 and in 1987 her earnings were approximately $12,000.
The husband obtained his PHD in December 1987, and they moved to Tennessee where the husband's post-doctoral work was at the Oak Ridge facility. He earned approximately $25,000 in 1988 and the wife earned $6000 as a substitute teacher.
Their child was born in May 1989 and by then the wife had a temporary teaching job for the school year 1988-89 and she earned $17,000 in 1989.
In 1990, the husband located a position in Japan which paid about $33,000, plus housing, utilities, and insurance benefits. They moved to Japan in mid 1990. The wife's 1990 income was $13,000. They were able to save money while in Japan between the husband's salary and the wife's part-time tutoring.
In 1991, the husband secured employment at the University of Connecticut. He is presently an assistant professor of soil chemistry there. In August 1991, the wife came to Connecticut to locate an apartment and in October 1991, the husband came to Connecticut to start his teaching position. In February 1992 they bought a single family home in Mansfield.
The husband started to physically abuse the wife while in Japan when, during an angry argument, he beat her about the head, both frightening her and causing her pain. In subsequent incidents he threatened her with physical injury, threw things at her, and repeatedly called her a "psychotic." The wife arranged for counseling in Japan at the Tell Community Counseling Service and, CT Page 4073 after repeated requests, the husband attended several sessions, although he denied abusing his wife, and denied doing so at the trial here. The Court does not accept the argument that the wife is fabricating her claims of abuse to better her position in these proceedings. It stretches credulity to believe that in 1991, while in Japan, she ran to a friend's house, called home to her parents for airfare to return to the states (which was offered but, in light of the counseling, was not utilized), and sought marital counseling either as part of a scheme to later better her position in court or that the assault complained of was somehow imagined.
After the husband moved to Connecticut, the relationship continued to be troubled. They argued, the husband threw things at his wife and the name calling continued. Matters came to a climax in August 1992 when they got into an argument while in their car. The wife was seated in the back with Maria and the husband was driving. He threw the plaintiff's shoes out and the wife had to get out to retrieve them, one of which was under the car itself. He also reached into the back, grabbed the plaintiff in the fleshy part of her stomach and twisted her skin, causing pain. When they reached home, the wife went to the local police as she was very fearful of the husband's rage and anger. The police took her to a women's shelter where' she remained for about one month. Although counseled by the staff at the shelter to get a restraining order, she was initially reluctant to do so. After several weeks, however, she did and moved back into the family home. In March 1993, by agreement, the husband received exclusive possession of the family home and the wife moved into an apartment.
The Court perceives the explosive temper of the defendant which led to episodic outbursts of rage and anger, and which intimidated the wife and placed her in fear for her safety, as the significant cause of the marital breakdown. Other factual findings may be discussed as needed to clarify the orders being entered.
Custody:
The parties shall have joint custody of the minor child with the mother being the primary residential parent, subject to reasonable visitation which shall include the visitation schedule herein after set forth. The Court declines the husband's request to be primarily responsible for the child's dental and optometric care. There is no reason to believe the mother would neglect the child's dental and optometric needs (while being primarily responsible for her other medical care), and the defendant's CT Page 4074 request would unnecessarily complicate things for the parties and the child.
Visitation:
The defendant shall have reasonable rights of visitation which shall include but not necessarily be limited to (if the parties agree to expand or modify these provisions), the following:
Alternate weekend visitation from Friday after school to 5 p.m. on Sunday.
Wednesday of each week from after school to 7:30 p.m.
The father shall be permitted to pick the child up at school at the beginning of the foregoing visitation periods.
The parties shall adjust the weekend schedule as necessary so that the child spends Mother's Day weekend with the plaintiff and Father's Day weekend with the defendant.
The child will alternate spending the following holidays between the mother and father as follows:
During even-numbered years the minor child is with the plaintiff on Easter, Labor Day, and Christmas; and with the defendant on New Year's, Memorial Day Observance, and Thanksgiving. During odd-numbered years the minor child is with the plaintiff on New Year's, Memorial Day Observance, and Thanksgiving; and with the defendant on Easter, Labor Day, and Christmas. The holiday periods as described above alternate between the parties so that New Year's Eve at 5 p.m. to New Year's Day at 7:30 p.m. will be alternated with Good Friday at 5 p.m. to Easter Sunday at 7:30 p.m.; the Friday immediately preceding Memorial Day Observed at 5 p.m. to Memorial Day Observed (Monday) at 7:30 p.m. will be alternated with the Friday immediately preceding Labor Day at 5 p.m. to Labor Day (Monday) at 7:30 p.m.; Thanksgiving Eve (Wednesday) at 5 p.m. to Thanksgiving Day at 7:30 p.m. will be alternated with Christmas Eve at 5 p.m. to Christmas Day at 7:30 p.m.
At the beginning of the summer in June, one entire weekend with the plaintiff will be canceled so that the child can spend two consecutive weeks with the defendant for an extended vacation. In August, two Wednesday evening visits will be canceled so that the child can have two consecutive weeks vacation with the plaintiff. CT Page 4075
During the two week vacation periods the non-residential parent shall be permitted one telephone call with the child during Wednesday of each week.
Any adjustments in the visitation schedule are not to result in the child spending more than two consecutive weekends with either the plaintiff or the defendant.
If there is no school on a Wednesday or Friday on which the father has visitation, visitation shall commence when the defendant gets out of work instead of the end of the school day, but not sooner than two hours prior to the time school would end.
Child Support:
The defendant shall pay child support in the amount of $148 per week (in accordance with the Connecticut Child support guidelines). Said order to be enforced by an immediate wage garnishment.
Medical Insurance:
The defendant shall provide medical insurance as available through his employer for the minor child. If said coverage is not available through his employer, then said coverage shall be provided by the plaintiff as available through her employer. If neither party has health insurance through his/her employment, they shall share equally the cost of medical insurance for the child. Any medical, dental optometric expenses not covered by insurance shall be shared equally by the parties. The provisions of 46b-84c shall apply.
The plaintiff shall have the option of obtaining medical insurance for herself pursuant to the COBRA provisions with any added cost involved to be borne by her.
Tax:
The husband shall claim the child as a tax exemption (federal and state) for the years 1993, 1994 and 1995. The wife shall claim the child as a tax exemption commencing in 1996 and each even year thereafter. The husband shall claim the exemption in 1997 and each odd year thereafter if his support payments are up to date as of December 31st of each year. CT Page 4076
Alimony:
The defendant proposes to pay rehabilitative alimony of $150 per week, and the plaintiff asks for alimony in the same amount. The parties disagree as to the term and conditions. In considering the competing requests the Court alludes to its findings herein, and also weighs the other financial orders in determining the alimony issue.
The wife has had her career ladder disrupted since 1986 when the parties married. Essentially her jobs were secondary to her husband's career, and she is now faced with the need to establish herself in a field with a reasonable income, job security to the extent possible, insurance and retirement benefits. She has to accomplish this while being the primary custodial parent of a soon to be five year old child with the attendant costs of day-care as may be required, miscellaneous extra-curricular activity costs, etc.
The husband is established in his career and while he may have achieved his status, even if did not have the help and assistance of his wife, she clearly made a substantial contribution to him, both financially and in providing the comfort and stability of a family home. She makes no claim to the retirement account he has established, valued by him at $13,800. The wife wishes to pursue a career in teaching elementary education. To that end she is attending college to obtain her masters degree, and her teaching certification. She is on schedule to receive her masters degree in May 1996, and would thereafter have to try to get a job in the teaching profession. She cannot teach in Connecticut with her present degree in art education and although she could obtain a teaching certificate by taking some courses and passing required tests, she would be limited to teaching art. It is her opinion that if she becomes qualified to teach general elementary education her employment opportunities would be substantially improved and that appears to be a reasonable claim.
The husband shall pay periodic alimony of $150 per week through the last full week ending in December 1996. Said alimony to be non-modifiable as to term and amount. Because to some extent this order is intended to be compensatory (although primarily rehabilitative), the alimony is not to sooner terminate upon the plaintiff's remarriage, but shall sooner terminate upon her death. The order of alimony is to be enforced by an immediate wage CT Page 4077 garnishment.
Marital Home:
The marital home is to be sold. The husband to be responsible for the mortgage payment, taxes, insurance and other expenses of the house prior to sale. According to the testimony, the parties have already entered into a contract to sell the house for $102,000. There is a mortgage balance of approximately $92,000. In addition there is a State of Connecticut lien of approximately $3000. This is the result of the plaintiff obtaining AFDC for a period of time when the defendant was not paying child support. The plaintiff does not presently get AFDC and the lien is for past support. It appears that there will be little, if any, equity in the house after the real estate agent's fee, costs of closing and payout of the mortgage and lien. Although the parties have agreed that any net proceeds from the sale of the home be split equally, the Court notes that this will result in the wife paying back one half of the AFDC lien which was caused by the husband's unexcused failure to pay child support. For these equitable reasons, the Court orders that any net proceeds from the sale of the family home after payment of the mortgage, lien, and costs of sale shall belong to the wife. In the event there are insufficient proceeds to pay the state's lien, the husband shall pay off any balance needed to release the lien.
Miscellaneous Orders:
The wife will have no interest to the TIAA-CREF account of the husband nor to any retirement rights he might have.
The wife will have no interest in the Mazda motor vehicle presently in the possession of the husband.
The husband shall provide life insurance in the amount of $10,000 naming the wife as beneficiary for the alimony period.
The husband shall name the minor child as irrevocable beneficiary of any life insurance provided by his employer until the child reaches the age of eighteen.
The wife shall name the minor child as irrevocable beneficiary of any life insurance provided by her employer until the child reaches the age of eighteen. CT Page 4078
The husband shall return $1,200 which he removed from the minor's Uniform Gift to Minors Account with the wife to be the trustee of the account.
The wife shall not relocate the minor child outside the State of Connecticut without giving the husband at least sixty days written notice (by registered or certified mail, return receipt requested) of her intent to change her state of residence.
The husband shall pay $1500 toward his wife's counsel fees within ninety days.
Each party shall be responsible for the liabilities shown on their respective financial affidavits.
The wife's maiden name of Jennifer Ellen Moore is ordered restored to her.
Klaczak, J.